IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David Thomas Bilodeau,                        ) | Civil Action No.  2:12-1298-CMC-BHH |
|                                                            ) | |
| Plaintiff,     ) | |
|                                                            ) | |
| vs.                                             ) | |
|                                                            ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin,                              ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social         ) | |
| Security,                                       ) | |
|                                                            ) | |
| Defendant.   ) | |
| _____  ) | |

      This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

      The plaintiff, David Thomas Bilodeau, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

      The plaintiff was 27 years old on his alleged disability onset date of November 1, 2003. (R. at 24, 30.)  The plaintiff claims disability due to depression and anxiety. (R. at 24.) The plaintiff graduated from college and has past relevant work as a technical training instructor, an insurance sales agent, an industrial truck operator, an office clerk, a material handler, and a painting supervisor. (R. at 180, 30.)

      The plaintiff filed an application for DIB on December 5, 2008. (R. at 22.) His application was denied initially and on reconsideration. (R. at 22.) An Administrative Law Judge (ALJ) held a hearing on September 15, 2010. (R. at 22.) In a decision dated September 24, 2010, the ALJ found that the plaintiff was not disabled. (R. at 22-31.) The

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.
>
> (2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2003, through his date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe impairments: depression and anxiety (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand and remember simple instructions but could not understand or remember detailed instructions. The claimant could carry out short and simple instructions but not any detailed instructions. He could maintain concentration and attention for periods of at least 2 hours and could perform best in situations that did not require ongoing interaction with the public. He could adapt to changes if they were infrequent and gradually introduced.
>
> (6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on December 17, 1975 and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2003, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful

employment.  *See* 20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling ("SSR") 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled.  Specifically, the plaintiff alleges that the ALJ (1) failed to resolve a conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles and (2) failed to properly apply Social Security Ruling 85-15.

The Court will address each alleged error in turn.

**I.    CONFLICT WITH THE DICTIONARY OF OCCUPATIONAL TITLES**

The plaintiff argues that the ALJ erred because the Vocational Expert's (VE) testimony was not consistent with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to elicit a reasonable explanation for the inconsistencies. (Pl. Brief at 5.)  The VE testified that someone of the plaintiff's age, education, and work experience, with the limitations the ALJ ultimately included in the plaintiff's RFC, could perform unskilled jobs existing in the national economy, including kitchen helper, packager, and sorter.  (R. at 69-71.)

The plaintiff notes that the Administrative Law Judge's hypothetical question to the vocational expert, regarding the plaintiff's limitations, included the following: He "would be able to perform best in situations that did not require ongoing interaction with the public, could adapt to changes if they were infrequent and gradually introduced." (R. at 70.)  The plaintiff complains, however, that these limitations are somehow in conflict with the respective DOT descriptions.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT. The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT. *See* SSR 00-4p. The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work. *See id.* A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

As an initial matter, the plaintiff does not cite any particular DOT description or quote any language therefrom, inconsistent with the VE testimony. And, as the defendant counters, the plaintiff concedes that the DOT, in fact, does not address limitations in public interaction or adaptability to work changes. (See Pl. Br. at 5 ("The DOT's descriptions of requirements for occupations do not include limits/requirements for interaction with the public or the frequency and speed of introducing changes to a job."); Pl. Br. at 6 (""The [ALJ's] hypothetical questions and the [v]ocational [e]xpert's answers were based on restrictions/limitations that clearly are not part of the DOT."). In other words, there was not

any "apparent" conflict to resolve, as required. *See, e.g., Fisher v. Barnhart*, 2006 WL 1328700, at *7-8 (finding the ALJ complied with SSR 00-4p where he inquired whether the VE's testimony was consistent with the DOT, elicited a reasonable explanation for the VE's knowledge of a sit-stand option "which is not provided in the [DOT]," and stated in the decision that the vocational expert's testimony was consistent with the DOT, and also finding that the

VE's testimony did not necessarily conflict with the DOT).

Regardless, the ALJ, in this case, expressly asked the VE if her testimony was consistent with the DOT, and the VE specifically testified that all three of the jobs she identified would accommodate the ALJ's limitations on public interaction and work changes (R. at 70-72.) The plaintiff argues that the ALJ did not testify as to any personal knowledge that such limitations could be accommodated in the identified jobs.

The ALJ's expertise in the matter was not challenged by the plaintiff's counsel at the hearing. The Court would presume, without at least some evidence to the contrary, that the VE testified from a place of knowledge and expertise, as was her role. And, as far as the Court can determine, there is "no requirement that [a] vocational expert have direct first-hand knowledge of someone in the claimant's condition performing the jobs he is said to be capable of performing." *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480–81 (6th Cir.1988).

Accordingly, the Court cannot perceive any error in the ALJ's application of SSR 00-4p.

## II.     Social Security Ruling 85-15

The plaintiff also complains that the ALJ did not properly apply Social Security Ruling 85-15. In general, SSR 85-15 provides that that where, as here, a claimant has solely non-exertional impairments that are not of listing-level severity, the adjudicator must proceed through the sequential evaluation process, assess the claimant's RFC, and determine whether the claimant can perform his past or other work. SSR 85-15. In

determining whether the claimant can perform other work, the adjudicator must not apply the agency's Medical-Vocational Guidelines to direct a conclusion regarding disability, but must instead determine (1) how much the person's occupational base "is reduced by the effects of the nonexertional impairment(s)"; and (2) "whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, expertise to make and work experience." *Id*. The adjudicator may use the publications set forth in 20 C.F.R. § 404.1566 or obtain VE assistance. *Id*. If vocational assistance is used and the decision is adverse to the claimant, the decision must include examples of jobs the person can perform and a statement of the incidence of such work in the regional or national economy. *Id*.

To the extent the plaintiff simply means to complain that the Ruling was not expressly cited (Pl. Brief at 7), the Court is unaware of any such requirement. It is clear, however, that the Ruling was followed. The ALJ assessed the plaintiff's RFC (R. at 26) and found he could not perform his past relevant work (R. at 30). The ALJ took VE testimony to determine that someone of the plaintiff's age, education, work experience, and with his RFC, could perform jobs existing in significant numbers in the national economy. (R. at 30-31, 67-73.) In accordance with SSR 85-15, the ALJ's decision contains specific examples of jobs the plaintiff could perform and the incidence of those jobs in the state and national economies. (R. at 31.)

The plaintiff does highlight one portion of SSR 85-15 that "a substantial loss of ability" to "respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" would "severely limit the potential occupational base." SSR 85-15. The plaintiff argues that the ALJ's RFC determination that the plaintiff "could perform best in situations that did not require ongoing interaction with the public" and that he "could adapt to changes if they were infrequent and gradually introduced" necessarily was an admission that the plaintiff suffered "a substantial loss of ability" in both areas – interaction with coworkers and changes in work routine. (R. at 26.)    But, the

ALJ essentially found no such "substantial loss."  First, he put no qualification on the plaintiff's work with supervisors or co-workers, as the Ruling addresses.  SSR 85-15.  The ALJ only recommended that his performance would be best in situations with limited public interaction – that is no restriction on his ability to deal with supervision or co-workers.  (R. at 26.)  Additionally, the ALJ found that the plaintiff could adapt to work changes if they were infrequent and gradually introduced.  The plaintiff has not offered any occupational evidence or legal authority that such qualifications constitute a "substantial loss" in his ability to adapt to changes in a "routine" work setting.  Indeed, the VE concluded that they were not, and specifically testified that a very significant occupational base – over one million jobs in the national economy – remained for someone with all of the plaintiff's limitations.  (R. at 70-71.)

The Court cannot recommend any error on the part of the ALJ.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

S/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

June 18, 2013
Charleston, South Carolina